### HECTOR COFFIN & wife *vs.* WILLIAM F. OTIS.

C., a British subject, executed this instrument, at New York: "Codicil 1st. I request my executors and trustees will, after my decease, pay to Mrs. M. C. C. one hundred pounds sterling, annually, in quarterly payments, during her life, out of my American property:" C. delivered this instrument to Q. at Boston, and requested him to keep it in his possession until C.'s death, or until he should call for it; and it remained in Q.'s hands till after C.'s death: After C. made and delivered this instrument, he made a will in England, by which he revoked all former wills and testaments by him before made, and devised and bequeathed all his property, in America and elsewhere, and appointed an executor, resident in Boston: This will was proved and allowed in England, and was filed in the probate court in Boston, and letters testamentary were issued to the executor here: M. C. C. brought a bill in equity against said executor, to compel him to pay to her the £100 sterling, annually, in quarterly payments. *Held,* that said instrument was not a *donatio mortis causa,* nor an appointment, nor an obligation for the payment of money; but that it was a testamentary paper, revoked by C.'s last will; and that the bill must be dismissed.

THIS was a bill in equity, in which the plaintiffs alleged that Sir Isaac Coffin, an admiral in the British navy, executed the following instrument in 1827 : " Codicil 1st. I request my

executors and trustees will, after my decease, pay to Mrs. Mary C. Coffin, wife of Mr. Hector Coffin, one hundred pounds sterling, annually, in quarterly payments, during her life time. And should her husband, Hector Coffin, survive her, I desire he may be paid the same sum, and in the same manner, out of my American property, as long as he lives. Given under my hand and seal, at New York; this 21st day of May 1827. Isaac Coffin, admiral. (seal.) Witness: W. J. Bunker, of New York. D. P. Clark, of New York."

The bill further alleged, that the said Coffin, the better to insure the payment of said sum, and to guard against the loss or unfair suppression of said instrument, committed the same to the care and custody of the Hon. Josiah Quincy, then mayor of the city of Boston, " to be by him safely kept until the decease of the said Sir Isaac should happen, then to be produced and enforced according to its true intent and meaning : " That said Coffin died in England, in 1839 ; that William F. Otis, Esq., of Boston, is his executor and trustee, having in possession a large amount of the American property belonging to said Coffin in his life time, and now subject to the management and disposition of said Otis, as such trustee as aforesaid : That the plaintiffs had exhibited to said Otis the aforesaid written instrument, and requested him to pay to the said Mary C. Coffin the said sum of £100 sterling, annually, in quarterly payments; but that he had omitted and neglected so to do.

Wherefore the plaintiffs prayed that the said Otis might make full answer to all said matters, and be directed, by a decretal order of the court, to pay to said Mary C. the sum in arrear and unpaid; and that the plaintiffs might have such other and further relief in the premises as their case might require. [There were other allegations in the bill, which were not admitted by the answer, and as to which evidence was taken. But they became immaterial, and are therefore omitted.]

The answer of the defendant (admitting that the instrument set forth in the bill was made by said Coffin, and left

Coffin & wife v. Otis.

by him in the care of said Quincy, as in the bill alleged) averred that said Coffin was a British subject; that on the 15th of March 1839, he was domiciled at Cheltenham, in the county of Gloucester, in Great Britain, and on that day duly made and executed his last will, in and by which, among other things, he devised and bequeathed to the defendant, all his property at Boston, in this Commonwealth, then in the defendant's hands, amounting, as said testator in his will alleged, to the sum of £11,500, and thereby directed that said sum should be left in the hands of the defendant, until it should, by accumulation, amount to £20·000, when the interest of said last mentioned sum should be paid to John Townsend Coffin, the nephew of said testator, and the principal sum, after said John's decease, to go to his children: That, by said will, the testator revoked and annulled all other wills and testaments that he had theretofore made: That said testator died at Cheltenham aforesaid, on the 23d of July 1839, and that his said will was duly proved and allowed in the prerogative court of the Archbishop of Canterbury, in Great Britain, on the 15th of January 1840: That on the 14th of August 1840, a copy of said will and of the probate thereof, duly authenticated, was produced by the defendant, he being one of the executors thereof, to the judge of probate for the county of Suffolk, in this Commonwealth, in which county there was estate of said testator, on which said will might operate, and thereupon, after all such proceedings were had as by the law in such case are prescribed, [Rev. Sts. c. 62,] it appeared to said judge that said instrument ought to be allowed in this State, as the last will and testament of said Isaac, the testator, and said judge ordered the said copy to be filed and recorded, and issued letters testamentary thereon to the defendant, in due form of law: That the property in the hands of the defendant, to which reference is made in said will, was and is, according to his knowledge and belief, all the estate in America of which said testator died seized and possessed, except the Magdalen Islands in the Gulf of St. Lawrence: That at the time of the filing of the plaintiffs' bill, the

defendant, as executor of said Coffin, held all his said property ; and that the annual income thereof would be sufficient to pay the said annual sum of £100, claimed by the plaintiffs, if they or either of them were entitled to demand and receive the same.  The defendant alleged that he could not decide what were the rights of the plaintiffs and his own liabilities and duties in the premises, and desired to act under the advice and indemnity of the court.

The plaintiffs filed a replication, and evidence was taken on both sides.  A copy of the last will of Admiral Coffin, and of the probate thereof, was produced, and was found to be as stated in the defendant's answer.  The deposition of Mr. Quincy was as follows : " Sometime in the year 1827, I believe, Sir Isaac Coffin called upon me personally, I then being mayor of the city of Boston, and delivered me a letter containing the paper marked A. B.," (the instrument set forth in the plaintiffs' bill,) " requesting me to keep it in my possession until his death, or until he called for it.  It has remained in my custody ever since, until I delivered it to Mrs. Coffin, the plaintiff, two or three years ago.  I have no recollection of his giving me any particular directions in relation to it, except as I have stated."

*H. H. Fuller*, for the plaintiffs.  The paper in question may operate as a *donatio mortis causa*, according to the decisions which have modified the former doctrine on that subject.  See *Nicholas* v. *Adams*, 2 Whart. 17.  *Wright* v. *Wright*, 1 Cow. 598.  *Wells* v. *Tucker*, 3 Binn. 366.  *Coutant* v. *Schuyler*, 1 Paige, 316.  Or it may operate as a valid obligation to pay money.  *Bowers* v. *Hurd*, 10 Mass. 427.  *Grover* v. *Grover*, 24 Pick. 261.  *Duffield* v. *Elwes*, 1 Bligh N. R. 497.  *Belden* v. *Carter*, 4 Day, 66.  *Wheelwright* v. *Wheelwright*, 2 Mass. 447.  Or it may be regarded as an appointment, so that the plaintiffs may take under the will.  1 Chance on Powers, §§ 822, 844–851, 1896.  *Hannis* v. *Packer*, Amb. 556.  *Zouch* v. *Woolston*, 2 Bur. 1147.  The law requires no particular solemnities for the execution of a power.  Tomlins's Law Dict. Power.

Coffin & wife *v*. Otis.

*W. Sohier*, for the defendant. The paper is a codicil, and must be proved in a probate court before a suit on it can be maintained. *The King's Proctor* v. *Daines*, 3 Hagg. Eccl. Rep. 218. *Thorold* v. *Thorold*, 1 Phillim. 1. But it was revoked by the testator's last will; and as the trust under which the defendant acts was constituted by the will, he cannot dispose of the property differently from the directions of the will.

If the paper is relied on as a *donatio mortis causa*, the several particulars which constitute it such must be made out. There must be a delivery to the donee, or to some one for the donee. The delivery to Mr. Quincy was a mere deposit with him till Admiral Coffin's death, or till he should call for it. If it was delivered for safe custody only, and to be subject to his future control and disposition, it was not a good delivery. Per Bayley, J. in *Doe* v. *Knight*, 5 Barn. & Cres. 688. The delivery must be such as will pass the property; and if the donor retains the dominion, there is not such a delivery. *Pennington* v. *Gittings*, 2 Gill & Johns. 208. *Bunn* v. *Markham*, 7 Taunt. 224, and 2 Marsh. 532.

The paper is not an appointment; for no power of appointment existed in law, as the testator always retained the possession of the property.

Nor can the paper be regarded as a valid obligation. There was no consideration for it, and equity will not assist a donee to recover the amount of a gift made without consideration. *Edwards* v. *Jones*, 7 Simons, 325. *Guild* v. *Guild*, 15 Pick. 129. *Antrobus* v. *Smith*, 12 Ves. 39, and Perkins's note (*a*.) *Tate* v. *Hilbert*, 2 Ves. jr. 111.

*J. Savage*, in reply. If this is not a *donatio mortis causa*, yet the doctrines applicable to such a donation apply here. The donor's estate in this country was charged with the gift, egacy, codicil, or whatever it may be denominated. If the executor in England would be ordered to perform the direc tion in this paper, had all the testator's property been there this court will now order the executor here to do it.

The most reasonable way of considering the case is to

regard the paper as an appointment, according to the authori-
ties cited in the opening. If so regarded, it is not revoked
by the will. Former wills and testaments only are thereby
revoked. See *Denny* v. *Barton*, 2 Phillim. 575.

SHAW, C. J. The claim of Mrs. Coffin upon the paper exe-
cuted ł y Admiral Coffin, and deposited by him with Mr.
Quincy when mayor of Boston, is placed by her counsel on
several grounds. 1st. As a good *donatio mortis causa.*
Whatever differences there may be, amongst the courts of
some of the States, in regard to what may be the subject of
such a gift, it is, we believe, agreed on all hands that it must
be some chattel, or some note or other security for money,
capable of tradition or manual delivery ; and that there must
be an actual delivery, either to the donee or to some person
for his use. The paper in question has none of the qualities
or characteristics of a security for money ; there are no words
of obligation, promise or engagement, purporting to create any
debt or duty. But had it been of a different character, it
could not take effect as such gift, because it was not delivered
by Admiral Coffin to the donees or to any person for their
use. It was delivered to a public officer to keep till the wri ‑
ter should call for it, or till his death. In the latter event, if
it was a testamentary paper, and in other respects available,
it would operate without delivery ; and so the act was not
wholly void. But as it was subject to be recalled by the de-
positor at any time, and as it was in no event to be delivered
to any one else, it could not be a delivery to the mayor for
the use of the donees.

2d. As an appointment. But to give effect to an appoint-
ment, there must be some settlement, or trust, or fund estab-
lished, in respect to which the power is reserved, and out of
which the appointment is to be made. This was a direction
to Admiral Coffin's executors and trustees to pay an annuity
out of his American property, by a paper purporting to be a
codicil ; and it presupposes a will previously executed, by
which such fund had been established and trust created. But
by the subsequent will, made many years afterwards, and

14 *

purporting to be a disposition of all his property and a revocation of all prior wills, the will existing in 1827 was revoked and the fund out of which the power of appointment was to be executed, if it could be construed to be one, failed.

3d. As an obligation for the payment of money. Without relying on the objection, that if it was a contract to pay money, the remedy should have been sought at law and not in equity, it seems to the court quite clear that it cannot be regarded as an obligation. There are no words purporting to be those of contract, obligation or engagement; no purpose, object or consideration expressed; and the payment could only be made by his executors, of course after his decease. If we go out of the paper itself, to evidence *aliunde*, we think, whatever his purposes were at the time, they were altered afterwards. But the consideration already stated under the former head is decisive. An obligation must be delivered to the obligee or to some person for his use; and here was no delivery, actual or constructive.

4th. But the court are of opinion, from the whole tenor of the paper, that it was essentially testamentary. It purports to be a codicil to direct how his executors shall apply and dispose of his property after his decease. It therefore possessed all the characteristics of a will. If a previous will had been proved, this might have been proved as a codicil, which it purports to be. If no previous will had been proved, this paper, if available at all, must have been proved as an original will, in the probate court, before any right or claim could be founded upon it. But as the subsequent will of 1839 operated in terms, as well as by necessary implication, as a revocation of all prior wills and testamentary dispositions, this paper, whether regarded as a codicil or an original will, is revoked.

*Bill dismissed.*